# United States Court of Appeals
## For the First Circuit

No. 00-2319

ELLEN WHITNEY,

Plaintiff, Appellant,

v.

GREENBERG, ROSENBLATT, KULL & BITSOLI, P.C.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Richard A. Mulhearn for appellant.
Richard C. Van Nostrand, with whom Patricia L. Davidson was on brief, for appellee.

July 27, 2001

**COFFIN, <u>Senior Circuit Judge</u>.** Plaintiff-appellant Ellen Whitney sued her former employer, defendant-appellee Greenberg, Rosenblatt, Kull & Bistoli (GRK&B), a Worcester accounting firm, for disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Massachusetts anti-discrimination statute, Mass. Gen. Laws ch. 151B. Whitney, a secretary for eight years at the firm, claimed that a cognitive disability resulting from chemotherapy treatment affected her performance at work and led to her unlawful discharge. The district court granted summary judgment to GRK&B, finding that Whitney was not disabled within the meaning of the law because her impairment did not substantially limit her ability to work or to learn, as evidenced by her success at a similar job soon after termination from GRK&B's employ. We affirm.

BACKGROUND

Whitney worked as the executive assistant to an accountant at GRK&B since 1988. After being diagnosed with ovarian cancer, Whitney was treated with chemotherapy in the early months of 1995, during which time she took a leave of absence from the firm. Upon her return, Whitney resumed her regular duties, which she performed without incident for well over a year. In 1996, GRK&B adopted a new computer operating

system and Whitney struggled unsuccessfully to learn the new software program. That September, she suffered an anxiety attack, which prompted a second leave of absence, during which she was diagnosed as having dementia due to the chemotherapy administered some eighteen months earlier. Whitney was evaluated by a psychologist and a speech pathologist, who found her condition to be "mild but significant" and recommended several accommodations to her employer. The prognosis was for Whitney to be "back up to speed" within six months.

When she returned to work for the second time, in November 1996, Whitney was greeted with a less than favorable reception: her requests to work part-time or to adjust her hours were denied, and she received an unflattering job evaluation. Whitney's duties were also restricted. She was no longer entrusted with managing client assets and was denied access to the vault. Several weeks later, on December 26, 1996, she was fired.

Less than three weeks after her termination, however, Whitney secured a full-time but temporary position as the secretary to the vice president of a bank, where she performed many of the same administrative duties as she had with the accounting firm. In fact, when the bank converted its computer software to another operating system, Whitney, by her own

admission, had "no problem acclimating herself to the [new] program." When that temporary position ended, Whitney moved immediately into another full-time administrative position at a different bank where she later became a permanent employee. At neither of these two post-GRK&B jobs did Whitney reveal her impairment to, or request any accommodation from, her employer. By March 1997, within six months of her dementia diagnosis, Whitney's doctor reported that her condition had "significantly improved" such that she was "able to function at a reasonable capacity."

Whitney filed suit in state superior court, claiming that she had been fired because of her disability. After defendant removed the case to federal court, the district court granted summary judgment for GRK&B, holding that Whitney failed to adduce sufficient evidence to demonstrate that her cognitive disability was severe or lengthy enough to substantially limit her ability to work or to learn. See Whitney v. Greenberg, Rosenblatt, Kull & Bistoli, P.C., 115 F. Supp. 2d 127, 132 (D. Mass. 2000). We review that ruling de novo. Gelabert-Ladenheim v. Am. Airlines, Inc., 252 F.3d 54, 58 (1st Cir. 2001).

DISCUSSION

A plaintiff seeking the protections of the ADA and its Massachusetts analogue, Chapter 151B, must be disabled (or

handicapped, in the parlance of Chapter 151B) within the meaning of the law.[1] In order to show that she is covered, Whitney must demonstrate that she (i) had an impairment that (ii) substantially limited (iii) a major life activity. 42 U.S.C. § 12102(2)(A).[2]

We need not dwell on the first or last of these three prongs as the middle one provides an obvious basis for decision.

---

[1] The definitions of "disability" and "handicap" are virtually identical in the statutes. Compare 42 U.S.C. § 12102(2) with Mass. Gen. Laws ch. 151B, § 1(17). Given the similarity, our singular analysis disposes of both the federal and state claims. See Ward v. Massachusetts Health Research Inst., 209 F.3d 29, 33 n.2 (1st Cir. 2000) ("The Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law."). Although a recent decision of the SJC, decided after the argument in this case, indicates that Massachusetts law diverges from the ADA where mitigating or corrective devices are at issue, compare Dahill v. Police Dep't of Boston, 748 N.E.2d 956, 963 (Mass. 2001) (holding that mitigating or corrective devices are not considered in assessing handicap) with Sutton v. United Air Lines, Inc., 527 U.S. 471, 481 (1999) (holding that mitigating or corrective devices are considered in assessing disability), because such measures are not at issue here, we need not consider the state claim separately. In any event, no distinction between the ADA and Chapter 151B was argued to the district court.

[2] Of the other two ways in which to qualify for protection from disability discrimination - having a record of an impairment, or being regarded as impaired, id. § 12102(2)(B)&(C) - neither is seriously contended here. Whitney does not argue that her cancer, the only impairment of which there was any developed record, instigated the adverse employment action. Nor does she contest that GRK&B terminated her because it regarded her as impaired based on stereotypes about disability, i.e., based on any misperception about her impairment. See Gelabert-Ladenheim, 252 F.3d at 62.

-6-

We will therefore assume without deciding that dementia induced by chemotherapy is a covered impairment, cf. Gordon v. E.L. Hamm & Assocs., 100 F.3d 907, 912 (11th Cir. 1996) (assuming the side effects suffered as a consequence of chemotherapy to be an impairment under the ADA),[3] and that the major life activities asserted to have been impacted, chiefly working and learning, are protected activities, see Sutton, 527 U.S. at 492 (assuming work to be a major life activity); see also Gelabert-Ladenheim, 252 F.3d at 58 (noting that working has been explicitly recognized by EEOC regulations as a major life activity) (citing 29 C.F.R. § 1630.2(i)); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 155 (1st Cir. 1998) (same for learning).[4]

---

[3] GRK&B goes to great lengths to contest the reliability of the medical evidence that purportedly shows dementia secondary to chemotherapy to be a qualified impairment. Whitney argues that because her diagnosis is among those listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), it qualifies as a covered impairment. The district court did not analyze the medical evidence, finding instead that Whitney's cognitive disorder qualified because it was akin to an "organic brain syndrome," one of the exemplars enumerated in the ADA regulations. See Whitney, 115 F. Supp. 2d at 131 (citing 29 C.F.R. § 1630.2(h)(2)). We need not resolve this issue.

[4] Whitney takes exception to the district court's telescoping under the rubric of working and learning other asserted major life activities, namely: thinking, concentrating, organizing data, processing information, interacting with others, and performing other everyday tasks such as sleeping and driving at night. Even if each of these is a distinct major life activity, we agree with the district court that all may be reasonably subsumed within the broader context of working and

To make a colorable claim of disability discrimination, it is not enough that a bona fide impairment had some effect on recognized life activity. An ADA plaintiff must show that the impairment substantially limited that activity in order to survive a defense motion for summary judgment. Analysis of the "substantially limits" prong requires an individualized inquiry, guided by three considerations articulated by the EEOC: (i) the nature and severity of the impairment, (ii) its duration, and (iii) the expected long-term impact. See 29 C.F.R. § 1630.2(j)(2). To prevail, Whitney would have to establish that her cognitive impairment was profound enough and of sufficient duration, given the nature of her impairment, to hamper her ability to work or to learn. The record supports neither restriction.

In order to demonstrate a substantial limitation where work is at issue, a "plaintiff must show that she is significantly restricted in her ability to perform 'a class of jobs' [or] . . . 'a broad range of jobs in various classes.'" Gelabert-Ladenheim, 252 F.3d at 60 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)&(C)); see also Sutton, 527 U.S. at 492 ("If

learning. See Whitney, 115 F. Supp. 2d at 131; see also Emerson v. N. States Power Co., No. 00-3746, 2001 WL 710296, at *4 (7th Cir. June 26, 2001) (treating memory, concentration, and interacting with others as activities that "feed into" the major life activities of learning and working).

-8-

jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs."). This burden cannot be met where the plaintiff was able to perform without accommodation a job that is substantially similar to the one in which she claims discrimination. See Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 240 (1st Cir. 2001) (affirming summary judgment for employer where ADA plaintiff performed same job without restriction for more than a year after impairment arose). But that is precisely the situation here.

As the district court recognized, "Whitney [] presented no evidence that her deficits significantly restricted her ability to perform either a class of jobs or a broad range of jobs in various classes." Whitney, 115 F. Supp. 2d at 132. Indeed, the evidence is that she satisfactorily completed at the two banks the same types of administrative duties for which she had been responsible at GRK&B. Whitney did not offer testimony from a vocational expert, or evidence of labor market statistics to support her claims. Cf. Gelabert-Ladenheim, 252 F.3d at 60-61. The only evidence before us suggests that she could do

essentially the same job elsewhere without accommodation shortly after her termination.

Whitney argues that her ability to sustain post-termination employment does not vitiate her claims because the banks "provided the accommodation that Plaintiff's medical team had repeatedly requested of Defendant, but Defendant did not provide - a supportive work environment." But Whitney never requested any accommodation from either bank; in fact, she didn't even inform them of her disability. There is simply no support in the record for Whitney's contention that the banks provided accommodations that GRK&B did not.

Whitney's claim that her major life activity of learning was also substantially limited is similarly belied by the record. Here again, the evidence is insufficient to show that Whitney's impairment endured long enough or was so severe as to have much of a long-term impact on her ability to learn. Her difficulty with the new computer operating system at GRK&B, which offered fairly extensive training, stands in stark contrast to Whitney's admission that within months after starting at the bank, she was able to acclimate herself to a new program with minimal assistance. Absent other evidence that her ability to learn was hindered, Whitney's claim cannot withstand summary judgment. See Bercovitch, 133 F.3d at 155-56 (holding

ADA claim non-actionable where, although impairment prevented plaintiff from achieving his absolute maximum learning potential, his learning ability did not fall below average).

Because Whitney's cognitive impairment was mild, reversible, and short lived, no reasonable jury could conclude based on this record that it substantially limited her ability to work or to learn. As such, and as a matter of law, she was not disabled within the meaning of the ADA and therefore not entitled to its protections.

Affirmed.