Paula LALIBERTE, Plaintiff,

v.

BASF BIORESEARCH CO.,
et al. Defendant.

No. CIV.A.01–40141–NMG.

United States District Court,
D. Massachusetts.

Aug. 13, 2004.

Stephen T. Fanning, Providence, RI, for plaintiff.

Amy Cashore Mariani, Cambridge, MA, Michael A. Fitzhugh, Fitzhugh, Parker & Alvaro, LLP, for defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case arises from a claim of disability discrimination under the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA") and Massachusetts General Laws Chapter 151B ("Chapter 151B"). Pending before the Court is a motion for summary judgment by defendants BASF Bioresearch Corporation, Abbott Laboratories and Abbott Bioresearch Center (hereafter collectively "BASF" or "Defendants").[1] Plaintiff, Paula Laliberte ("Laliberte") opposes the motion.

### I. *Factual Background*

According to the Defendants, in December of 1999 Laliberte was employed as Animal Resources Operations Manager of the Bioresources Department at BASF. Around that time BASF hired veterinarian Dr. Sonya McCathey ("McCathey") to head that department, which made McCathey Plaintiff's supervisor.

McCathey noted that Laliberte had difficulty fulfilling her job responsibilities, particularly that she failed to report information in a timely manner, failed to perform oversight functions assigned to her, resisted in performing tasks and was disruptive in departmental meetings. McCathey attempted to counsel Plaintiff regarding her job performance but after several meetings McCathey noticed no improvement. BASF then ordered Laliberte to attend Employee Assistance Plan Counseling ("EAPC").

Noticing no change in Laliberte's professional manner or ability to perform her job responsibilities after she began EAPC, BASF then required Plaintiff to take a leave of absence. On January 14, 2000, she started a paid leave pursuant to BASF's short-term disability policy. At that time McCathey expected that Plaintiff would return to work and become a contributing member of the department. Laliberte did not request FMLA leave and BASF did not consider Plaintiff's leave to be under the FMLA.

While Laliberte was on leave, McCathey interviewed all department personnel in order to gain an understanding of the department and how it functioned. She learned from those interviews that several employees thought Plaintiff behaved inappropriately, was hostile and resistant to change and was responsible for creating a demoralized atmosphere within the department. One employee, Lilla Nickerson, stated that Plaintiff had twice informed her that her position in the department was going to be eliminated which was untrue and caused Nickerson severe anxiety.

After concluding the interviews, McCathey prepared Plaintiff's required annual review. Based upon McCathey's own observations as well as the interviews of other employees, the review documented her poor job performance. After determining that: 1) there were few, if any, responsibilities associated with Laliberte's position, 2) the department could function without that position and 3) her return to the department would destroy the improving departmental morale, McCathey decided to terminate Plaintiff's employment.

---

1. Subsequent to the events at issue in this case BASF was purchased by Abbott and renamed Abbot Bioresearch Company ("ABC"). ABC is a wholly owned subsidiary of Abbott.

Laliberte was scheduled to return to work on a part-time basis on May 17, 2000. McCathey and BASF Human Resources employee Pamela Barney ("Barney") scheduled a meeting with Plaintiff. They informed her that her employment was being terminated for the reasons stated in her annual review. Laliberte became upset and left the meeting before McCathey and Barney were able to go over the contents of the review with her. Laliberte's position was never filled and has been eliminated.

On July 6, 2000, less than two months after her employment at BASF ended, Laliberte obtained a position at Stenton, a Providence, Rhode Island company where she is currently employed, with similar responsibilities to those she had held at BASF. Until she was diagnosed with breast cancer while employed at Stenton, Plaintiff neither requested nor received any accommodations in order to fulfill her job responsibilities.

Plaintiff disputes Defendants' version of the facts. She claims that she was employed by BASF for 11 years before she was terminated. She maintains that while at BASF she suffered from severe medical impairments, including, but not limited to, severe depression, which restricted her ability to perform major life tasks and that BASF was fully aware of her medical condition.

Laliberte states that in January, 2000 McCathey perceived Laliberte as suffering from a medical impairment and accordingly ordered that she should attend EAPC. After attending EAPC Plaintiff requested reasonable accommodation for her disability, specifically that her tasks and assignments be reduced to writing. She received no accommodation. On January 13, 2000, the EAPC referral source informed BASF that Laliberte was unable to work in her position, due to stress. Defendants knew that Laliberte had been found by their own disability insurance carrier to be disabled from work due to a medical condition. At or about that time Laliberte took leave of absence due to her medical impairment.

While Laliberte was on medical leave no one made any effort to contact her about any alleged workplace issues regarding her performance. During her medical leave of absence, she was issued the first negative evaluation of her career. She contends that she was not fired for any conduct pre-dating her medical problems but because she intended to return to work following her medical leave. She maintains that when she attempted to return to work on May 18, 2000, her position had not been eliminated. She also contends that McCathey's performance review was false and based upon fabricated complaints.

Laliberte maintains that when she returned to work she was treated differently from other employees. She was removed from the company's email and voice mail systems. Her professional and personal belongings were removed form her office. Her name was also removed from all signs in her department. She was not given an opportunity to correct any misstatements in her performance review. On or about May 18, 2000, she was discharged purportedly because of her negative performance review. She maintains that BASF has a progressive disciplinary system to which she was not allowed to resort.

Prior to her discharge Laliberte had never had any disciplinary problems at BASF. She disputes the veracity and accuracy of the notes made by McCathey indicating that employees complained about her performance and demeanor. She states that she has affidavits of fellow employees to the effect that they never made negative comments about her to McCathey.

Laliberte claims that her medical problems, including tinnitus, memory lapses, headaches, panic attacks, trouble sleeping, and shortness of breath were apparent to everyone. The EAP Coordinator testified that he was informed that Laliberte's job was "protected." Her treating psychiatrist, Dr. Richard Tomb, had diagnosed her with Post–Traumatic Stress Disorder, severe anxiety and depression, physical or mental impairments which substantially limit one or more of her major life activities. She maintains that she was fired because of this medical problem rather than for any alleged performance problems.

## II. *Procedural Background*

On August 2, 2001, Laliberte filed the instant action, claiming violation of the ADA, Chapter 151B, and the FMLA. On October 3, 2003, Defendants filed the pending and opposed motion for summary judgment. In it, they argue that: 1) they had a legitimate, non-discriminatory reason for terminating Laliberte which she cannot rebut through admissible evidence, 2) at the time of her termination, Laliberte was not "disabled" within the meaning of the ADA or Chapter 151B, 3) there is no evidence that she ever requested, or was denied leave time under FMLA and 4) even if she could prove that she requested leave under FMLA, any request for reinstatement could not be granted because her position was eliminated.

## IV. *Discussion*

### A. *Standard of Review*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. *Plaintiff's Allegations of Discrimination under the ADA (Count I) and Chapter 151B (Count II)*

Defendants first argue that Laliberte cannot prevail on her claims of discrimination on the basis of disability under either the ADA (Count I) or Chapter 151B (Count II) because she has failed to establish two vital aspects of these claims. First, they allege that Laliberte cannot rebut BASF's legitimate, non-discriminato-

ry reasons for terminating her employment. Second, they allege that she cannot establish prima facie evidence that she is disabled under either the ADA or Chapter 151B. They maintain that those deficiencies mandate summary judgment for the defendants. Laliberte disputes those contentions.

 In a case where there is no direct evidence of discrimination based on disability, claims of discrimination under both the ADA and Chapter 151B are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which was adopted by the Massachusetts Supreme Judicial Court in *Wheelock College v. Massachusetts Commission Against Discrimination*, 371 Mass. 130, 355 N.E.2d 309 (1976). First, the plaintiff must establish a prima facie case of discrimination. To do so she must establish: 1) she is disabled within the meaning of the statute, 2) she is qualified to perform the essential functions of her position with or without reasonable accommodations, 3) she was terminated or otherwise subject to an adverse employment action and 4) that she was terminated because of her disability. *See Benoit v. Technical Manufacturing Corp.*, 331 F.3d 166, 176 (1st Cir.2003); *Dartt v. Browning–Ferris Industries, Inc.*, 427 Mass. 1, 9–10, 691 N.E.2d 526 (1998).

Once the plaintiff has made her prima facie case, the burden shifts to the defendant to prove that the plaintiff was terminated for a legitimate, non-discriminatory reason. *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58 (1st Cir.2002); *Blare v. Husky Injection Molding Systems Boston, Inc.*, 419 Mass. 437, 442, 646 N.E.2d 111 (1995).

If the defendant offers such a reason, the presumption of discrimination is lifted and the burden shifts yet again to the plaintiff to show by a preponderance of evidence that the proffered reason is, in fact, a pretext for a discriminatory reason. *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6 (1st Cir.2000); *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128, 686 N.E.2d 1303 (1997).

In the instant case, Defendants argue: 1) that Laliberte was terminated for a legitimate, non-discriminatory reason that she cannot rebut with credible, admissible evidence and 2) that she cannot make a prima facie case of discrimination because she was not "disabled" within the meaning of the ADA and/or Chapter 151B. Laliberte asserts that she qualifies as a person with a disability under the ADA and Chapter 151B and that she will be able to prove the reason BASF offers for her discharge is merely a pretext. At a minimum she contends that substantial questions of material fact exist in this case that must be decided by the jury.[2]

1. *Whether Laliberte can establish a prima facie case of disability discrimination*

 Taking Defendants' arguments out of order, they maintain that Laliberte cannot establish a prima facie case of discrimination because she is not disabled within the meaning of the ADA or Chapter 151B. A person is "disabled" if she is substantially limited in her performance of a major life activity, has a record of such impairment, or is regarded as having such an impairment. *Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.*, 258 F.3d 30, 33 (2001); 42 U.S.C. § 1202(2). BASF

---

**2.** Laliberte also argues that there is direct evidence of discrimination in this case, preserving her case regardless of the Court's ruling on the *McDonnell Douglas* analysis.

Because the Court will, as explained *infra*, deny the defendants' motion for summary judgment, it does not address this issue.

argues that when an employee alleges that she is substantially limited in her ability to work, as this plaintiff has, she must demonstrate that her ability to perform work in a class of jobs or a broad range of jobs is significantly restricted. *Whitney* at 33. Unless she can show that she is disqualified from more than a narrow range of jobs, and that she is disqualified for a prolonged term, she cannot show that she had a substantially limiting impairment. *Tardie v. Rehabilitation Hospital of Rhode Island*, 168 F.3d 538, 542 (1st Cir. 1999). It maintains that "mild reversible and short-lived cognitive impairments" do not constitute disabilities under the ADA and Chapter 151B. *Whitney*, 258 F.3d at 34.

BASF points to this Court's decision in *Whitney*, which was affirmed by the First Circuit Court of Appeals. In that case, the Court granted summary judgment for an employer who terminated the plaintiff with chemotherapy-induced dementia. The plaintiff then obtained similar employment, where she did not disclose her condition, did not request or receive any accommodation and was able to meet performance expectations. *Id.* at 33–34. The First Circuit held that Whitney's condition was mild, reversible and short-lived and thus she was not disabled. BASF argues that, as was the case with the plaintiff in *Whitney*, Laliberte has offered no evidence that demonstrates any permanent cognitive impairment that would render her disabled from any major life activity for more than a brief period of time. When terminated from BASF, she was hired by another company where she requested and required no accommodations. She has held that position for many years. Defendants therefore argue that summary judgment is appropriate in this matter.

Laliberte maintains that there is a dispute of material fact as to whether she qualifies as a person with a disability within the meaning of the statutes. She intends to introduce evidence that she suffers from a physiological disorder or emotional condition consistent with the requirements of the ADA and Chapter 151B, i.e. post-traumatic stress disorder. She maintains that evidence comports with the standard recently articulated by the Supreme Court in *Toyota Motor Manufacturing, Kentucky Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) and that therefore a jury must decide whether she, in fact, had a substantial impairment that limits a major life activity. Additionally, she argues that even if BASF convinces the jury that she is not disabled, the question remains as to whether her employer *perceived* her as disabled and treated her discriminatorily as a result. She argues that Congress intended the ADA to apply to people who are "regarded" as having impairments, *see* 29 C.F.R. pt. 1630 app. Sec. 1630.2(1), and as such, a trier of fact could conclude that her termination was based on a perception that she was disabled. She concludes that the motion for summary judgment on the grounds that she has not stated a prima facie case must, therefore, be denied.

◼ Laliberte is correct that material questions of fact exist as to whether she is disabled within the meaning of the statute. Although the defendant's citation to *Whitney* is instructive, the situation surrounding Plaintiff's termination raise serious questions about whether she was suffering from a disability or not, whether she was limited in her major life activities and whether her employers regarded her as disabled. Because those questions of fact exist, BASF's motion for summary judgment as to Counts I and II on the grounds that she has not stated a prima facie case of discrimination will be denied.

*2.Whether Laliberte can rebut BASF's alleged nondiscriminatory reason for her termination*

BASF also argues for summary judgment as to Counts I and II on the grounds that Laliberte was terminated for a legitimate, non-discriminatory reason which Laliberte cannot rebut. It argues that she was fired because of her hostile attitude and injurious actions which destroyed department morale and not for discriminatory reasons. It maintains that an employer is under no obligation to continue to employ an individual whose actions do not comport with the company's standards of conduct even if she alleges a disability. *Pakizegi v. First National Bank of Boston*, 831 F.Supp. 901, 910 (D.Mass.1993); *Garrity v. United Airlines*, 421 Mass. 55, 62, 653 N.E.2d 173 (1995). It cites this Court's decision in *Pakizegi v. First National Bank of Boston*, 831 F.Supp. 901, 910–911 (D.Mass.1993), in which this Court granted summary judgment to an employer who terminated an woman of Iranian heritage on the grounds of unprofessional behavior, finding that there was no evidence from which a jury could conclude that the decision to terminate her employment for unprofessional behavior was pretextual.

Defendants argue that, like the *Pakizegi* case, there is no evidence from which a jury could conclude that the decision to terminate Laliberte for her unprofessional behavior was a pretext for discrimination. They maintain that she must have definite and competent evidence to rebut BASF's legitimate non-discriminatory motivation for her termination to defeat summary judgment. *Mesnick v. General Electric*, 950 F.2d 816, 822 (1st Cir.1991). She must purportedly have specific facts to rebut this contention and in the instant case no such facts exist.

Laliberte contends that she has sufficient evidence that the reason given for her termination was pretextual. Pretext can be shown by introducing evidence that the employer's proffered explanation for its decision to terminate the plaintiff is unworthy of credence. *Reeves v. Sanderson Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Laliberte argues exactly that in this case. She states that the only criteria relied upon by her employer for her discharge was a negative evaluation in 1999, prepared by a new supervisor who had overseen her work for 13 work days and based upon unsubstantiated rumor and innuendo. She was never afforded a reasonable opportunity to respond to the negative performance evaluation and she was not allowed to utilize the company's progressive discipline system. She claims that the alleged basis for the termination is filled with factual disputes which warrant a trial to resolve the issue of whether the stated reason for termination is pretext. She intends to introduce testimony of at least four employees who deny that they ever made the critical comments that McCathey attributed to them.

Laliberte also argues that there is no mechanical formula for finding pretext but that it is a fact-intensive inquiry. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 57 (1st Cir.1999). She argues that federal courts are particularly cautious about taking such question out of the hands of the jury. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998).

■ The Court agrees with Laliberte. She and BASF offer very different versions of the circumstances of her termination and material questions of fact remain as to what happened. A jury must decide which version of the story is more credible. Laliberte should have the opportunity to present evidence that her alleged

unprofessional behavior was a pretext for an unlawful termination based upon disability and BASF's motion for summary judgment on Counts I and II will, therefore, be denied.

### C. *Plaintiff's Allegation that Defendants Violated her Rights Under FMLA*

■ Defendants next argue that the Court should grant summary judgment on Count III of the complaint, the violation of the FMLA. They argue that: 1) Laliberte neither requested nor was denied leave under the FMLA and 2) even if she had been on FMLA leave she could not be reinstated to her former position because that position has since been eliminated. They maintain that since she never requested leave under FMLA she cannot allege that she is entitled to the protection of that statute, citing *Nelson v. City of Cranston ex rel McAteer*, 116 F.Supp.2d 260, 267 (D.R.I.2000). Additionally, they argue that even if she had requested leave under FMLA, her claims under Count III must be dismissed because no position exists to which she could be reinstated, it having been eliminated, citing *Criado v. IBM*, 145 F.3d 437, 446 (1st Cir.1998). They argue that if an employee's position is eliminated while she is on leave, the employer's obligation to the employee with regard to reinstatement comes to a close, citing *Barry v. Wing Memorial Hospital*, 142 F.Supp.2d 161, 164 (D.Mass.2001), 29 CFR § 825.216(a)(1).

Laliberte responds that there are material questions of fact as to whether she applied for FMLA or whether her job was terminated. Although she does not claim that she requested FMLA, she argues that the fact that she took paid disability leave under BASF's Short Term Disability Policy, as opposed to formally selecting unpaid leave under FMLA, should not prevent her from being protected by the FMLA statute. She claims, moreover, that had she not been fired her position would not have been eliminated and thus the elimination-of-position provision of FMLA should not apply. However, she cites no legal precedent for either proposition.

An employee claiming wrongful termination under FMLA must give her employer adequate notice of her intention to take such leave. 29 U.S.C.A § 2612(e)(1); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir.1998). An employee has no greater right to reinstatement under the FMLA than she would if her employment had not been interrupted by a leave of absence. 29 C.F.R § 825.216(a)(1). If an employee's position is eliminated while she is on leave, the employer has no greater obligation to that employee than if she were not on leave. *Id.* In this case, there is no evidence that Laliberte ever requested leave under FMLA. She cannot retroactively claim that her paid leave should have been FMLA leave. Furthermore, because her position at BASF was eliminated, she has no greater right to reinstatement than she would have had she not been on leave. Defendants' motion for summary judgment with respect to Count III of the complaint will be allowed.

### ORDER

For the reasons stated in the foregoing memorandum, BASF's motion to summary judgment (Docket No. 25) is, as to Counts I and II of the complaint, DENIED, and as to Count III of the complaint, ALLOWED.

**So ordered.**