**Libertad DAVILA–PEREZ, et al., Plaintiffs, Appellants,**

v.

**LOCKHEED MARTIN CORPORATION, et al., Defendants, Appellees.**

No. 98–1977.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1999.

Decided Feb. 8, 2000.

Luis Aníbal Avilés, with whom Rubén Colón–Morales, and Avilés & Colón Morales LLP were on brief, for appellants.

Francisco E. Colón–Ramírez, with whom Colón, Colón & Martínez was on brief, for appellee Martin Marietta Services, Inc.

Before TORRUELLA, Chief Judge, WALLACE,* Senior Circuit Judge, and O'TOOLE, Jr.,** District Judge.

TORRUELLA, Chief Judge.

This case arises from the events of May 12, 1995 that resulted in the death of Bienvenido González. The appellants—his widow, Libertad Dávila–Pérez, their children, his mother, and his sister—brought this personal injury action against appellee Martin Marietta Corporation, González's employer, and Teledyne Ryan Aeronautical Corporation.[1] Based on the statutory employer defense made available under the Puerto Rico Workmen's Compensation Act ("PRWCA"), 11 L.P.R.A. §§ 2, 21, the district court granted summary judgment in favor of appellee and dismissed all claims against it. We affirm on the alternative ground that the appellee was immune from suit under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905, pursuant to the Defense Base Act, 42 U.S.C. § 1651(a)(2).

## BACKGROUND

For purposes of this appeal, the Court adopts the following relevant facts. González was employed by Martin Marietta, an independent contractor retained by the U.S. Navy. He worked as an engine shop supervisor at the Aerial Target System at Roosevelt Roads Naval Station in Ceiba, Puerto Rico. On May 12, 1995, while González was conducting a test on new equipment, an explosion occurred. González suffered second and third degree burns

---

* Of the Ninth Circuit, sitting by designation.

** Of the District of Massachusetts, sitting by designation.

1. Appellants' corresponding suit against the U.S. Navy was consolidated with this action.

over thirty percent of his body and was hospitalized until his death on July 8, 1995.

Martin Marietta had procured workers' compensation and employers' liability insurance from CIGNA, pursuant to its contract requirements with the Navy. Benefits were paid to appellants in accordance with the policy terms. No policy was obtained from the State Insurance Fund Corporation of Puerto Rico on behalf of González.

The appellants filed this action pursuant to articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142 (1997), alleging that the damages suffered by González were the result of diverse negligent acts of the U.S. Navy, Martin Marietta, and Teledyne. Martin Marietta answered with a Motion for Summary Judgment asserting that it had insured González under the CIGNA policy and that it had immunity under the LHWCA, as extended by the Defense Base Act, to cover employees in military installations in U.S. territories and possessions. The appellants objected, arguing that the Defense Base Act no longer applies to Puerto Rico because it ceased to be a territory following the enactment of the Constitution of the Commonwealth of Puerto Rico on July 25, 1952. Without resolving the applicability of the Defense Base Act, the district court entered judgment for Martin Marietta based on the Puerto Rico statutory employer defense because "the objective of workers' compensation, i.e., provide benefits and medical care to employees injured while at work without regard to fault, was squarely met and that decedent and his family received compensation justly due."

## STANDARD OF REVIEW

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We review summary judgment *de novo*, "viewing 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that

party's favor.'" *Euromotion, Inc. v. BMW of N. Am., Inc.,* 136 F.3d 866, 869 (1st Cir.1998) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)); *see also Morris v. Government Dev't Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994). This standard of review permits us to uphold the district court's summary judgment regardless of whether we reject or adopt its rationale, so long as an "independently sufficient ground" is made manifest by the record. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (citing *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48–49 (1st Cir.1990)); *see also Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 184 (1st Cir.1999); *Hachikian v. FDIC,* 96 F.3d 502, 504 (1st Cir. 1996).

## DISCUSSION

The issue before this Court is whether Martin Marietta is entitled to immunity from tort claims because they are precluded by the applicable workers' compensation system. The appellee proposes two sources for statutory immunity: the LHWCA and the PRWCA. Because we conclude that the LHWCA applies and provides the exclusive remedy, that is where we begin our analysis.

■ In 1927, Congress passed the LHWCA, ch. 509, 44 Stat. 1424 (codified as amended at 33 U.S.C. §§ 901–950), to establish a system of uniform federal compensation for all injuries to employees in "the maritime field up to the line where local compensation would not be excluded by the existence of federal admiralty jurisdiction." *Royal Indem. Co. v. Puerto Rico Cement Corp.,* 142 F.2d 237, 239 (1st Cir. 1944) (citing S.Rep. No. 69–973; H. Rep. No. 69–1767); *see also Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 121–22, 124, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962) (concluding that Congress enacted LHWCA to provide uniform coverage and avoid uncertainty as to source of compensation). In other words, the LHWCA filled a gap

between the coverage of maritime law and state law created by the Constitution and derivative case law. *See Calbeck*, 370 U.S. at 115–25, 82 S.Ct. 1196.

In 1941, Congress extended the provisions of the LHWCA to U.S. military bases outside the United States by enacting the Defense Base Act, ch. 357, 55 Stat. 622 (codified as amended at 42 U.S.C. §§ 1651–1654). *See Royal Indem.*, 142 F.2d at 239. Specifically, the Act applies to employees working on "any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States." 42 U.S.C. § 1651(a). In 1944, in *Royal Indemnity*, we held that under the Defense Base Act, the federal compensation scheme of LHWCA applied to military defense bases in Puerto Rico without regard to local compensation laws. *See* 142 F.2d at 239. Although the First Circuit has yet to resolve whether Puerto Rico's Constitution, enacted in 1952, *see* Pub.L. 447, 66 Stat. 327 (1952) (codified as amended at 48 U.S.C. § 731(d)), altered Puerto Rico's status under the Defense Base Act, the Puerto Rico Supreme Court did not consider the issue when it applied the Defense Base Act to Puerto Rico in 1967, *see W.R.A. v. Superior Ct. of P.R.*, 94 P.R.R. 314, 323–24 (1967) (following *Royal Indemnity* and finding that language of statute "outside the United States" clearly includes Puerto Rico).

Based on dicta in *Vega–Mena v. United States*, 990 F.2d 684, 689–90 (1st Cir.1993), explicitly questioning the viability of *Royal Indemnity*, the appellant requests that we reconsider whether for the "narrow and specialized purposes of the Defense Base Act, Puerto Rico is [ ] a 'Territory or possession outside the continental United States' as those terms are there intended to be understood." [2] Of the three grounds which the appellant raises in support of its argument, (1) the relative significance of the Roosevelt Roads base, (2) the citizenship status of all employees at the base, and (3) the alleged change in Puerto Rico's status subsequent to the passage of the Defense Base Act, only the third has merit. Appellants' argument that the Roosevelt Roads base is more like those in states than those in Guantánamo, Cuba or the Phillippines is unavailing. We agree with the appellee that if the Defense Base Act applied to Alaska as an incorporated territory [3] until the point where it officially became a state, *see* Alaska Omnibus Act of June 25, 1959 § 40, Pub.L. 86–70, 73 Stat. 141, 150; *Budson Co., Contract 926 v. Oikari*, 270 F.Supp. 611, 612–13 (N.D.Ill. 1967), it is untenable that Puerto Rico is close enough to a state to be excluded from the Defense Base Act. Likewise, we agree with the appellee that there is no support for the contention that the citizenship of the base employees is a factor under LHWCA or the Defense Base Act,

2. For its purposes, the Court in *Vega–Mena* operated under the assumption that the Defense Base Act applies to Puerto Rico, but it questioned whether the Act should apply based primarily on (1) the evolution of federal and state compensation programs since 1944 and (2) the subsequent amendment to § 3(a) of LHWCA on which *Royal Indemnity* was based. *See id.* at 689–90 & n. 7. The amendment eliminated the § 3(a) language that established LWHCA coverage in the gap between federal maritime law and state compensation law. *See* 33 U.S.C. § 903; *Royal Indem.*, 142 F.2d at 238–39. However, as we recognized in *Royal Indemnity*, "the 'Coverage' language in Sec. 3(a) was inapplicable and became inoperative" for purposes of the Defense Base Act because there is no analogous conflict between federal law and the law

in a territory. *Id.* For the same reasons, the development of Puerto Rico's compensation law is not a factor in whether the Defense Base Act applies. *See id.* (observing that district courts in Hawaii and Alaska applied LHWCA "irrespective of the existence of an otherwise applicable local compensation law").

3. An incorporated territory was destined to become a state in contrast to territories such as Puerto Rico or the Phillippines where statehood was not planned. *See Balzac v. Porto Rico*, 258 U.S. 298, 304–05, 42 S.Ct. 343, 66 L.Ed. 627 (1922); *see generally Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904).

particularly as the logical presumption is that the Act is intended for American citizens serving in the military abroad. Therefore, we consider only whether circumstances have changed such that Puerto Rico is no longer a territory under the Defense Base Act. Although the appellant argues that the 1952 Constitution alters the status of Puerto Rico under the Act, the text of the statute, its legislative history, and subsequent amendments indicate otherwise.

■ We begin with the language of the statute, and only if the statute is ambiguous or leads to an unreasonable interpretation do we turn to the legislative history and other aids. *See Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 66 (1st Cir.1998); *Grunbeck v. Dime Sav. Bank of N.Y.*, 74 F.3d 331, 336 (1st Cir.1996); *Riva v. Massachusetts*, 61 F.3d 1003, 1007 (1st Cir.1995). Territory is not defined in the Act or in the case law interpreting it. *See* 42 U.S.C. § 1651(b); *Vega–Mena*, 990 F.2d at 690 n. 7. When a word is not defined within the statute, it is given its ordinary meaning, with all due consideration to the context. *See Brady*, 160 F.3d at 66; *Grunbeck*, 74 F.3d at 336; *Riva*, 61 F.3d at 1007. However, the term " 'territory' does not have a fixed and technical meaning" and "Puerto Rico may be found to be included within one act whose coverage extends to territories of the United States and excluded from another." *Vega–Mena*, 990 F.2d at 690 n. 7. Thus, whether Puerto Rico comes within the term "territory" depends upon the character and aim of the Act. *See id.*

■ The purpose of the Defense Base Act is to provide uniformity and certainty in availability of compensation for injured employees on military bases outside the United States. *See Royal Indem.*, 142 F.2d at 239; *see also O'Keeffe v. Pan Am. World Airways, Inc.*, 338 F.2d 319, 322

(5th Cir.1964) (observing that Act was adopted at request of Secretary of War to save on insurance expenses). The only consideration is whether the military base is in a territory or possession on land "outside the continental United States." 42 U.S.C. § 1651(a)(2). Therefore, by the plain meaning of the text, Puerto Rico is still covered by the Defense Base Act because (1) it is still subject to the plenary powers of Congress under the territorial clause, *see Harris v. Rosario*, 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980); (2) Congress has exclusive jurisdiction over the lands occupied by Roosevelt Roads, *see Quiles Viuda de Fonte v. Colsa, Inc.*, 99 J.T.S. 2 at 461–62 (1999); and (3) "continental United States" is defined to include only "the States and the District of Columbia," 42 U.S.C. § 1651(b)(4).

This interpretation is supported by legislative history specifically indicating that Puerto Rico is within the reach of the Act.[4] *See Royal Indem.*, 142 F.2d at 239 (citing H. Rep. No. 77–1070 (1941)). We are further convinced when we consider that the Defense Base Act was amended at least four times in the decade following the enactment of Puerto Rico's Constitution and Puerto Rico's status as a territory was left unchanged. *See* 42 U.S.C.A. §§ 1651, 1652 (West 1994). We must assume that Congress was aware of our holding in *Royal Indemnity* that Puerto Rico comes under the Defense Base Act and chose not to change Puerto Rico's status, *see Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *Garcia v. Friesecke*, 597 F.2d 284, 293 (1st Cir.1979) (citing cases), for there is no doubt that Congress knew the language necessary to include Puerto Rico as a state, *cf.* 28 U.S.C. § 1332(d) ("The word 'States,' as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.").

---

4. The report includes the following comments on the committee amendments: "These amendments extend the provisions of the bill to Puerto Rico, Guam, Guantánamo, Ameri-can Samoa, the Virgin Islands, Hawaii, Alaska, the Philippine Islands, and other possessions of the United States, except the Canal Zone." H. Rep. No. 77–1070 at 4.

Most important, the definition of "continental United States" was added to the Defense Base Act only seven years after the alleged change in Puerto Rico's status without any reference to that fact. *See Budson,* 270 F.Supp. at 613. In sharp contrast, in response to Alaska's transition from a territory to a state, Congress immediately deleted the reference to Alaska in the Defense Base Act and added the definition of "continental United States" to ensure that Alaska was excluded from the scope of the Act. *See* Alaska Omnibus Act, Pub.L. 86–70, 73 Stat. 141; *Budson,* 270 F.Supp. at 612–13. With nothing before us to suggest that application of the Defense Base Act to Puerto Rico would contravene the purpose of the Defense Base Act, we defer to the judgment of Congress to include Puerto Rico as a territory.

## CONCLUSION

For these reasons, we hold that Puerto Rico is still a territory for purposes of the Defense Base Act and that Martin Marietta was entitled to immunity under the LHWCA. Summary Judgment is affirmed.