**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-2575

ESTHER DÁVILA-RIVERA, RAFAEL VELEZ-RIVERA,
and CONJUGAL PARTNERSHIP VELEZ-DAVILA,
Plaintiffs, Appellants,

v.

CARIBBEAN REFRESCOS, INC. and ABC INSURANCE CO.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Dominguez, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Circuit Judge,
and Siler,[*] Senior Circuit Judge.

Roberto Ariel Fernández with whom Juan M. Frontera-Suau was on brief for appellants.
Oreste R. Ramos with whom Jorge I. Peirats was on brief for appellees.

September 16, 2005

---

[*]Of the Sixth Circuit Court of Appeals, sitting by designation.

**SILER**, <u>Senior Circuit Judge</u>.  Plaintiffs Esther Dávila-Rivera, Rafael Velez-Rivera, and the Conjugal Partnership Velez-Davila (collectively, "Dávila") appeal the district court's grant of summary judgment to Defendants Caribbean Refrescos, Inc. ("CRI"), and ABC Insurance Company on her claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182 <u>et seq</u>.  In addition, Dávila appeals the district court's decisions to strike her response to CRI's motion for summary judgment and to dismiss without prejudice her Commonwealth law claims.  For the reasons discussed hereafter, the district court's grant of summary judgment is **AFFIRMED**.

## I.  BACKGROUND

Dávila was employed by CRI from 1974 until 2002, most recently as an Administrative Assistant II in the Finance Department.  In 2000, she underwent corrective therapies for carpal tunnel syndrome ("CTS").  In June of that year, Dávila told her immediate supervisor, José Martínez, that she needed to have corrective surgery for her CTS.  At that time, Martinez did not express any objection to the forthcoming surgery; however, he instructed her to inform him of the date in advance.  This surgery was ultimately set for December 14, 2000, and Dávila informed Martínez of the date through a vacation request made in December.  This request was approved, although she alleges that he balked at granting the request and initially ordered her to change the date of her

surgery.

Dávila completed the rehabilitation treatment on January 18, 2001, and her doctor, Dr. Angel Pérez Toro, stated that she could return to work on January 22, 2001. Dr. Pérez Toro completed a medical questionnaire on functional capacity for CRI, asserting that Dávila could perform both fine and heavy hand manipulation and that she could lift, push, or haul up to five pounds. When Dávila returned to work, she also was evaluated by a CRI physician, Dr. Carlos A. Canales Quintero, who concluded that Dávila could lift up to ten pounds. The weight restriction therefore was relaxed from five pounds to ten pounds.

Upon her return, Martínez assigned Dávila to digitally scan documents. Although she asserts that she told him that the work was repetitive and would affect her CTS, she was not reassigned. Two days later, Daisy Meléndez, a CRI company nurse, noted that Dávila's right hand was swollen. Dr. Canales recommended a hand brace, and, in a follow-up visit, noted the swelling had gone away.

Dávila contends that working conditions at CRI caused her to suffer from depression. On February 27, 2001, CRI referred her to the State Insurance Fund to receive medical treatment for her depression and other emotional conditions. She was placed on short-term disability leave with a one-year reserve period. Dávila also requested long-term disability leave benefits from NATLSCO, the company managing CRI's disability plan. This request was

denied in November 2001.  On February 27, 2002, CRI notified Dávila that her reserve period had ended and, therefore, that her employment had been terminated.

In October 2002, Dávila filed a complaint in the United States District Court for Puerto Rico alleging, *inter alia*, that CRI terminated her employment and failed to reasonably accommodate her CTS and emotional depression conditions in violation of the ADA. CRI moved for summary judgment in October 2003.  In December 2003, Dávila filed her opposition to this motion ("First Opposition"). The First Opposition was accompanied by a 43-page brief that exceeded the 25-page limit established by Local Rule 7.1(e) and the district court's order.  When CRI moved to strike, the court granted Dávila "the opportunity to re-file [the Opposition], after pruning it into a twenty five page document."  Dávila subsequently filed a revised opposition ("Second Opposition"), which was slightly less than 25 full pages.  CRI again moved to strike on the ground that this Second Opposition violated Local Rule 7.1(e).  The magistrate judge compared the First and Second Oppositions and recommended that the Second Opposition be stricken and CRI's motion for summary judgment be treated as unopposed.  This recommendation was adopted by the district court.  The magistrate judge noted that the two documents were textually virtually identical, with the only changes being the removal of footnotes and several paragraphs.  She determined, in part from this textual analysis, that Dávila's

Second Opposition was printed in a font smaller than allowed by Rule 7.1(e).

In August 2004, the district court granted CRI's motion for summary judgment, dismissing with prejudice Dávila's ADA claim and her other federal claims. In addition, the court dismissed without prejudice her Commonwealth law claims. Dávila appeals the district court's decision to strike the Second Opposition, its grant of summary judgment to CRI on her ADA claim, and its dismissal of the Commonwealth law claims.

## II. DISCUSSION

**Local Rule Violation**

While this court reviews deferentially a district court's refusal to forgive a local rule violation, see Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004) (internal citation omitted), we need not rule on this matter because even taking into account the evidentiary materials highlighted in the Second Opposition, Dávila's claims fail.[1]

**Summary Judgment**

We review _de novo_ a district court's entry of summary judgment, viewing the entire record in the light most favorable to the party opposing summary judgment. See Dávila-Pérez v. Lockheed Martin Corp., 202 F.3d 464, 466 (1st Cir. 2000). All reasonable

---

[1] In all events, Dávila conceded at oral argument that she was not prejudiced by the district court's decision to strike her Second Opposition.

inferences are made in favor of the non-moving party. Id. Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Dávila appeals the grant of summary judgment only as to her ADA claims. Because the district court ordered the Second Opposition stricken from the record, CRI's motion for summary judgment was unopposed. However, the district court is "still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991).

"The ADA prohibits discrimination in employment against qualified persons with a disability." Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (citing 42 U.S.C. §12112(a)). Three alternative definitions of "disability" are provided: an individual is considered to be disabled if (1) she has "a physical or mental impairment that substantially limits one or more of [her] major life activities," 42 U.S.C. § 12102(2)(A); (2) she has "a record of such an impairment," id. § 12102(2)(B); or (3) she is "regarded as having such an impairment," id. § 12102(2)(C).

"Major life activities" are "activities that are 'of central importance to daily life.'" Carroll, 294 F.3d at 238 (quoting Toyota Motor Mfg. v. Williams, 534 U.S. 184, 197 (2002)). The

courts have recognized various "major life activities," including the performance of manual tasks, Toyota Motor Mfg., 534 U.S. at 198; lifting, Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 21 (1st Cir. 2002); and sleeping, Calero-Cerezo v. DOJ, 355 F.3d 6, 21 (1st Cir. 2004) (citing Criado v. IBM Corp., 145 F.3d 437, 442-43 (1st Cir. 1998)). In addition, the Supreme Court and this court have assumed, without deciding, that working may be considered a major life activity. See id. (citing Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999)). We also have noted that concentrating "may be reasonably subsumed within the broader context of working and learning." Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, 258 F.3d 30, 33 (1st Cir. 2001).

Dávila must show that her impairment substantially limits a major life activity. Therefore, she must demonstrate either that she is unable to perform a major life activity that an average person in the general population can perform or that she is significantly restricted in the performance of a particular major life activity as compared to an average person in the general population. See 29 C.F.R. § 1630.2(j)(1). "To be substantially limiting, '[t]he impairment's impact must . . . be permanent or long-term.'" Carroll, 294 F.3d at 238 (quoting Toyota Motor Mfg., 534 U.S. at 198).

Dávila bears the burden of showing that she has a qualified disability. See Calero-Cerezo, 355 F.3d at 20. She claims two

impairments, CTS and severe depression. CTS has been recognized as a physical impairment. See, e.g., Toyota Motor Mfg., 534 U.S. 199. In addition, "[t]his circuit has recognized depression as a mental impairment that may constitute, at least in some circumstances, a disability under federal law." Calero-Cerezo, 355 F.3d at 20.

In her Amended Complaint, Dávila asserted that her CTS "limited her writing and computer activities." She asserts on appeal that her CTS impaired her major life activities of performing manual tasks and lifting. Although she points to the January 2001 lifting restriction imposed by Dr. Pérez Toro and modified by Dr. Canales, this restriction is insufficient to demonstrate a substantial limitation, as it was in effect only from January 22, 2001 to February 12, 2001, for three weeks. Furthermore, the same form indicated that, at that time, she was able to engage in fine and thick hand manipulation. Thus, Dávila has failed to demonstrate that she was substantially limited in the performance of manual tasks or lifting.

In her Amended Complaint, Dávila asserted that her depression prevented her from working. She asserts on appeal that her depression additionally impaired her major life activities of sleeping and concentrating. First, we note that she has failed to demonstrate that her depression substantially limited the major life activity of working. The Supreme Court has observed that "[w]hen the major life activity under consideration is that of

working, the statutory phrase 'substantially limits' requires . . . that plaintiffs allege they are unable to work in a broad class of jobs." Toyota Motor Mfg., 534 U.S. at 200 (quoting Sutton, 527 U.S. at 491). Dávila has failed to make such an offering. In addition, she alleges, but has failed to demonstrate, that her depression substantially limited her ability to sleep or concentrate. No evidence was introduced that would demonstrate she was substantially restricted or that the limitations were permanent or long-term.

As a result, Dávila's ADA claim fails. She has not produced sufficient evidence to demonstrate that she had a qualified disability. Consequently, we need not address the remaining grounds upon which the district court's grant of summary judgment was based. See Carroll, 294 F.3d at 238.

**Supplemental Jurisdiction**

This court reviews a district court's refusal to exercise supplemental jurisdiction for abuse of discretion. Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co., 215 F.3d 195, 200 (1st Cir. 2000). Jurisdiction in this case is based upon Dávila's federal claims; she therefore requested that the district court exercise supplemental jurisdiction over the non-federal claims. See 28 U.S.C. § 1367(a). Supplemental jurisdiction exists when "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court

comprises but one constitutional 'case.'" <u>Rodriquez</u> v. <u>Doral Mortg. Corp.</u>, 57 F.3d 1168, 1175 (1st Cir. 1995) (quoting <u>United Mine Workers</u> v. <u>Gibbs</u>, 383 U.S. 715, 725 (1966)).

When the foundational federal question claims are dismissed, the district court may reassess its jurisdiction over the supplemental claims. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>see also</u> <u>Roche</u> v. <u>John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256-57 (1st Cir.1996). Ordinarily this assessment will "weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." <u>Camelio</u> v. <u>American Fed'n</u>, 137 F.3d 666, 672 (1st Cir. 1998). Original jurisdiction in this case rested upon the ADA and other federal claims. Thus, because the district court properly granted summary judgment on the ADA claim and the dismissal of the other federal claims has not been appealed, we find that the district court did not abuse its discretion in declining supplemental jurisdiction over the Commonwealth law claims.

**AFFIRMED.**